IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEVANA LOMMA,<br><br>        Plaintiff,<br><br>   vs.<br><br>CLARE E. CONNORS, in her individual and official capacity as Attorney General of the State of Hawaiʻi; DAVID Y. IGE, in his individual and official capacity as Governor of the State of Hawaiʻi; DEREK S.K. KAWAKAMI, in his individual and official capacity as Mayor of the County of Kauai,<br><br>        Defendants. | CIVIL NO. 20-00456 JAO-RT<br><br>ORDER DISMISSING IN PART AND STAYING IN PART THIS CASE |

**ORDER DISMISSING IN PART AND STAYING IN PART THIS CASE**

Pro se Plaintiff Levana Lomma ("Plaintiff") challenges the constitutionality of the Mask Mandate in the Eighteenth Proclamation Related to the COVID-19 Emergency ("Eighteenth Proclamation") issued by Defendant David Ige, Governor of the State of Hawaiʻi ("Governor Ige"), approved by Defendant Clare Connors as Attorney General of the State of Hawaiʻi ("AG Connors"), and enforced by Defendant Derek Kawakami, Mayor of Kauai ("Mayor Kawakami") (collectively,

"Defendants"). Defendants seek dismissal of Plaintiff's claims or alternatively, for a stay.

The Court finds this matter suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. For the following reasons, the Court DISMISSES IN PART AND STAYS IN PART this case.

## BACKGROUND

### I. Factual History

As COVID-19 appeared in Hawai'i, Governor Ige issued an Emergency Proclamation on March 4, 2020, authorizing the expenditure of State monies, and suspending specified Hawai'i statutes. *See* https://governor.hawaii.gov/wp-content/uploads/2020/03/2003020-GOV-Emergency-Proclamation_COVID-19.pdf (last visited May 17, 2021). Since then, Governor Ige has issued a series of supplemental proclamations. The Eighteenth Proclamation,[1] issued on February 12, 2021, is the subject of this lawsuit and includes a Mask Mandate requiring all

---

[1] Governor Ige subsequently issued a Nineteenth Proclamation on April 9, 2021, and a Twentieth Proclamation on May 7, 2021. *See* https://governor.hawaii.gov/wp-content/uploads/2021/04/2104031-ATG_Nineteenth-Emergency-Proclamation-for-COVID-19-distribution-signed.pdf (last visited May 17, 2021); https://governor.hawaii.gov/wp-content/uploads/2021/05/2105031-ATG_Twentieth-Proclamation-Related-to-the-COVID-19-Emergency-distribution-signed.pdf (last visited May 17, 2021).

individuals with the State of Hawaiʻi to "wear a face covering over their nose and mouth when in public." https://governor.hawaii.gov/wp-content/uploads/2021/02/2102078-ATG_Eighteenth-Proclamation-Related-to-the-COVID-19-Emergency-distribution-signed.pdf (last visited May 17, 2021). "Face covering" is defined as: "a tightly woven fabric (without holes, vents, or valves) that is secured to the head with either ties or straps, or simply wrapped and tied around the wearer's nose and mouth." *Id.*

Exhibit J to the Eighteenth Proclamation sets forth the following exceptions to the Mask Mandate:

> A. Individuals with medical conditions or disabilities where the wearing of a face covering may pose a health or safety risk to the individual;
>
> B. Children under the age of 5;
>
> C. While working at a desk or work station and not actively engaged with other employees, customers, or visitors, provided that the individual's desk or workstation is not located in a common or shared area and physical distancing of at least six (6) feet is maintained;
>
> D. While eating, drinking, smoking, as permitted by applicable law;
>
> E. Inside private automobiles, provided the only occupants are members of the same household/living unit/residence;
>
> F. While receiving services allowed under a State or county order, rule, or proclamation that require access to that individual's nose or mouth;

>    G. Where federal or state safety or health regulations, or a financial institution's policy (based on security concerns), prohibit the wearing of facial coverings;
>
>    H. Individuals who are communicating with the hearing impaired while actively communicating (e.g., signing or lip reading);
>
>    I. First responders (police, fire fighters, lifeguards, etc.) to the extent that wearing face coverings may impair or impede the safety of the first responder in the performance of his/her duty;
>
>    J. While outdoors when physical distance of six (6) feet from other individuals (who are not members of the same household/living unit/residence) can be maintained at all times; and
>
>    K. As specifically allowed by a provision of a State or county COVID-19 related order, rule, or proclamation.

*Id.* Face shields may not substitute face coverings unless one of these exceptions apply or an individual cannot "wear a face covering due to medical conditions or disabilities where the wearing of a face covering may pose a health or safety risk to the person." *Id.*

Plaintiff complains that pursuant to the Eighteenth Proclamation, the Kauai Athletic Club required her to wear a mask while exercising, in violation of her "rights to free speech, expression, religion, privacy, free association, and right to breathe." ECF No. 37 ¶ 28. As result, Plaintiff cancelled her membership with the club. *See id.*

## II.     Procedural History

Plaintiff commenced this action on October 23, 2020.  On October 26, 2020, she filed a Motion for a Speedy Hearing under Rule 57 of Fed. R. Civ. P., ECF No. 6, followed by an Amended Complaint on October 28, 2020.  ECF No. 8.  Based on the parties' agreement, Plaintiff then filed a Second Amended Complaint ("SAC").  ECF Nos. 36–37.  The SAC asserts infringement upon Plaintiff's (1) free speech and expression under the First Amendment "by abridging [her] ability to speak audibly and clearly, removing facial expression which is an aspect of the content of speech, forcing the adoption of a cult-like religious tradition, which violates [her] religious convictions" and (2) "God-given right to breathe freely and to simply be left alone," both of which are fundamental rights protected by the Ninth Amendment.  ECF No. 37 ¶ 2.  Although Plaintiff characterizes this lawsuit as a constitutional challenge, *id.* ¶ 1, she also appears to accuse Governor Ige of lacking the authority under Hawaiʻi Revised Statutes ("HRS") § 127A-2 to issue the Eighteenth Proclamation.[2]  *Id.* ¶ 45.  According to Plaintiff, COVID-19 is not a

---

[2]  Given Plaintiff's statement that the Court has supplemental jurisdiction over state law claims, *see* ECF No. 37 ¶ 26, and the requirement that the Court liberally construe pro se pleadings, *see Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), the Court accepts her HRS § 127A-2 allegations as a distinct claim.  The Court observes, however, that it is difficult to identify Plaintiff's precise claims because her allegations are scattered throughout the lengthy SAC and are not delineated by claim.

(continued . . .)

public health emergency in Hawaiʻi, masks are not effective in minimizing the spread of COVID-19 and may in fact increase its spread, and masks pose health risks by decreasing oxygen intake and forcing excessive carbon dioxide intake. *Id.* ¶ 65.

Plaintiff requests a declaration that the Eighteenth Proclamation is unconstitutional and void, an injunction prohibiting Defendants from enforcing it, and fees and costs. *Id.* at 40.

On March 9, 2021, Mayor Kawakami filed a Motion to Dismiss Second Amended Complaint for Declaratory and Emergency Injunctive Relief Filed on February 28, 2021 [ECF No. 37]. ECF No. 38. On March 11, 2021, Governor Ige and AG Connors (collectively, "State Defendants") filed a Motion to Dismiss

---

(continued . . .)

Plaintiff also articulates inconsistent positions in her filings. *Compare* ECF No. 43 at 18 ("Plaintiff also claims a right to relief under the Hawaiʻi state constitution, Article I, Section 2 'Rights of the People.'"), *with* ECF No. 44 at 26 ("Plaintiff seeks relief under federal law, not state law. Plaintiff does not cite Hawaiʻi law as a basis for damages or injunctive relief."). And, for the first time in her Opposition to Mayor Kawakami's Motion to Dismiss, Plaintiff asserts violations of the Hawaiʻi Constitution. ECF No. 43 at 5–10, 14, 18. Claims, facts, or statutory authority presented in an opposition to a motion to dismiss do not sufficiently present a claim. *See Reno v. Nielson*, 424 F. Supp. 3d 1045, 1053 (D. Haw. 2019) ("An opposition to a motion to dismiss is an improper vehicle to assert additional facts not initially alleged[.]" (citation omitted)); *cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[R]aising [a] claim in a summary judgment motion is insufficient to present the claim to the district court." (citations omitted)). Thus, the Court does not construe Plaintiff's federal constitutional claims as also implicating the Hawaiʻi Constitution.

Second Amended Complaint. ECF No. 40. Plaintiff filed oppositions on April 2, 2021. ECF Nos. 43–44.

On April 7, 2021, the Court issued an Entering Order ("EO") directing the parties "to explain whether the disposition of the state court appeal in *For Our Rights, et al. v. Ige, et al.*, or any other state court case, could affect this case. And if so, whether a stay would be appropriate." ECF No. 45. The parties filed responses on April 12, 2021, ECF Nos. 46–48, and additional supplemental memoranda on April 20 and 23, 2021. ECF Nos. 51–53.

*For Our Rights* was filed in the Hawai'i Circuit Court of the Fifth Circuit on September 1, 2020, challenging Governor Ige's authority to extend a 60-day state of emergency through supplemental proclamations under HRS Chapter 127A and alleging that the proclamations were unconstitutionally vague. ECF No. 46 at 2; ECF No. 48 at 2; ECF No. 47 at 3. Plaintiff, the Chief Executive Officer of For Our Rights, a non-profit corporation, was one of 17 plaintiffs in the lawsuit. ECF No. 48 at 2. The state court granted the defendants'[3] motion to dismiss, concluding that HRS Chapter 127A empowers Governor Ige to issue supplemental proclamations beyond a single 60-day period. ECF No. 47 at 3; ECF No. 47-3 at 2. In addition, the state court deemed moot and dismissed with prejudice the

---

[3] The named defendants were the State of Hawai'i and the State Defendants. ECF No. 47-4.

plaintiffs' claim that prior supplemental proclamations were vague. ECF No. 47 at 3; ECF No. 47-3 at 2. The plaintiffs appealed to the Hawaiʻi Intermediate Court of Appeals ("ICA"), and the opening brief deadline was April 29, 2021. ECF No. 47 at 3–4; ECF No. 47-5.

## DISCUSSION

The parties agree that *For Our Rights* could affect this case. ECF Nos. 46–48. Defendants argue that abstention pursuant to *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), is appropriate, and State Defendants also argue that the Court could impose a stay pursuant to its inherent powers. ECF Nos. 46–47, 51–52. Plaintiff contends that the Court must assert its jurisdiction because this case involves federal constitutional claims that were not presented in *For Our Rights* and the *Pullman* requirements are not satisfied.[4] ECF No. 53 at 2, 6–9.

The *Pullman* abstention doctrine authorizes district courts to postpone "the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189

---

[4] In her initial response to the Court's EO, Plaintiff argued that there are no exceptional circumstances justifying abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). But the Court does not invoke *Colorado River* abstention.

(1959)). "And it is not even necessary that the state adjudication 'obviate the need to decide all the federal constitutional questions' as long as it will 'reduce the contours' of the litigation." *Smelt v. County of Orange* (*Smelt II*), 447 F.3d 673, 679 (9th Cir. 2006) (quoting *id.* at 380).

*Pullman* abstention is appropriate where:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014) (citation omitted); *see Smelt II*, 447 F.3d 673, 679 (citation omitted).[5] The Court lacks discretion to abstain when the foregoing requirements are not met. *See Courtney v. Goltz*, 736 F.3d 1152, 1163 (9th Cir. 2013) (citation omitted). The Court finds that the foregoing requirements are satisfied here.

**I.    Sensitive Area of Social Policy**

Notwithstanding Plaintiff's failure to cite 42 U.S.C. § 1983, the Court acknowledges that this case implicates civil rights issues.[6] "Federal courts should

---

[5] "*Pullman* abstention applies whether or not a state proceeding is pending[.]" *Gilbertson v. Albright*, 381 F.3d 965, 970 n.6 (9th Cir. 2004).

[6] Section 1983 "is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotation marks and citation omitted).

be reluctant to abstain in civil rights cases regardless of the type of constitutional interest at stake; abstention can delay the redress of significant constitutional wrongs." *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985) (citation omitted). However, while the practical effect of abstention in such cases might "impose an exhaustion requirement not appropriate to 42 U.S.C. § 1983," abstention may nevertheless "be proper in a civil rights case to avoid unnecessary interference with an important state program." *Id.* (citations omitted). Indeed, "there is no *per se* civil rights exception to the abstention doctrine." *C-Y Dev. Co.*, 703 F.2d at 381 (citation omitted).

## A. First Amendment Claim

The United States Supreme Court has been reluctant to abstain in cases involving First Amendment rights of expression. *See C-Y Dev. Co.*, 703 F.2d at 381. Plaintiff alleges that the Mask Mandate infringes upon her First Amendment rights to free speech, expression, and religion. ECF No. 37 ¶¶ 2, 65. Generally, *Pullman* abstention is "inappropriate when First Amendment rights are at stake" "because the guarantee of free expression is always an area of particular federal concern." *Courthouse News*, 750 F.3d at 784 (internal quotation marks, citations, and footnote omitted). This is due in part to "the fact that in many cases, the delay that comes from abstention may itself chill the First Amendment rights at issue." *Porter v. Jones*, 319 F.3d 483, 492–93 (9th Cir. 2003) (citations and footnote

omitted). However, "there is no absolute rule against abstention in first amendment cases." *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987).

Whether an abstention-related delay may chill First Amendment rights turns on the existence and/or stage of state court proceedings and, at least in part, on the procedural posture of the federal court proceedings. The Ninth Circuit recognized that "the delay that is particularly pernicious in First Amendment cases was not an issue" in *Almodovar v. Reiner* because the legal issue was already pending before the California Supreme Court. *Porter*, 319 F.3d at 494. Similarly, in *Smelt v. County of Orange* ("*Smelt I*"), the court invoked *Pullman* abstention in a case involving First Amendment claims in part because cases addressing the same question were "well under way in state court," were "past the trial level," and would "be appealed to the California Supreme Court." 374 F. Supp. 2d 861, 868 (C.D. Cal. 2005), *vacated on other grounds by* 447 F.3d 673; *see also Smelt II*, 447 F.3d at 681 n.22 ("In all events, state litigation on the issues is already well underway." (citations omitted)).

Conversely, abstention is improper in the absence of state court proceedings due to the chilling effect caused by delay, especially where a federal court case has progressed significantly. *See, e.g.*, *Porter*, 319 F.3d at 494 (noting that the parties had already litigated the case for over two years in federal court, and it was "far from clear that the case would be resolved prior to the 2004 election if Plaintiffs

11

were sent to state court"); *Verizon Nw., Inc. v. Showalter*, 282 F. Supp. 2d 1187, 1190 (W.D. Wash. 2003) (finding *Pullman* abstention inappropriate given the absence of proceedings "before any state court or administrative body" and delays associated with a state court ruling (citation omitted)).

      Here, Plaintiffs and State Defendants are parties to *For Our Rights*, *see* ECF No. 47-4, which is currently before the ICA, rendering abstention particularly compelling.  *See Almodovar*, 832 F.2d at 1140 ("That a pending state court litigation between other parties might resolve the issues presented weighs in favor of abstention." (citations omitted)).  Meanwhile, this case has not proceeded past the initial stages of litigation.[7]  The Court concludes that this case is one where "the delay that is particularly pernicious in First Amendment cases" is not at issue.  *Porter*, 319 F.3d at 494.  Indeed, allowing the ICA to proceed first will promote the *Pullman* abstention doctrine's intention of avoiding conflict between federal courts and state legislatures and preventing "the premature determination of constitutional questions."  *Id.* at 492 (internal quotation marks and citation omitted).  Accordingly, Plaintiff's First Amendment claims do not prevent abstention.

---

[7] The fact that the losing party on appeal could seek further relief from the Hawaiʻi Supreme Court does not militate against abstention.  *See Smelt I*, 374 F. Supp. 2d at 868.

### B. Public Health and Safety Constitute a Sensitive Area of Social Policy

Defendants argue that this case concerns a sensitive area of social policy, namely the safety, health, and welfare of the public during a pandemic. ECF No. 51 at 8–10; ECF No. 52 at 6–7. Plaintiff misapprehends this requirement, conceding that it is satisfied because "there is a sensitive federal question that requires resolution through federal constitutional law." ECF No. 53 at 6. As earlier explained, the relevant inquiry is whether "the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open." *Courthouse News*, 750 F.3d at 783 (internal quotation marks and citation omitted).

This case unquestionably touches upon a sensitive area of social policy. The COVID-19 global pandemic[8] is unprecedented, and states have been tasked with determining how best to manage public health and safety. *See Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2614 (2020) (mem.) (Kavanaugh, J., dissenting) ("Under the Constitution, state and local governments, not the federal courts, have the primary responsibility for addressing COVID–19 matters such as quarantine requirements, testing plans, mask mandates, phased reopenings, school closures, sports rules, adjustment of voting and election procedures, state court and

---

[8] Plaintiff claims that it is a "'pandemic' that never was." ECF No. 37 at 29 (underline omitted).

correctional institution practices, and the like."). The area of social policy concerning public health and safety is as sensitive an area — and in some cases more so — than other areas of social policy deemed satisfactorily sensitive under this *Pullman* requirement.  *See, e.g.*, *Smelt II*, 447 F.3d at 681 (holding that "it is difficult to imagine an area more fraught with sensitive social policy considerations in which federal courts should not involve themselves if there is an alternative" than the institution of marriage (footnote omitted)); *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (identifying land use planning as a sensitive area of social policy (citations omitted)); *Almodovar*, 832 F.2d at 1140 ("[F]or *Pullman* abstention purposes, a challenge to an anti-obscenity statute concerned 'arguably more sensitive social issues' than land use planning, which is regularly recognized as a sensitive issue of social policy." (citation omitted)); *McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1458 (9th Cir. 1986) (finding that "[t]he allocation of water during times of water shortage is a sensitive area of social policy" (citation omitted)); *Manney v. Cabell*, 654 F.2d 1280, 1284 (9th Cir. 1980) (identifying a state's operation of detention facilities as "a sensitive area of social policy . . . into which the federal courts do not lightly intercede" (citations omitted)).  Accordingly, the first requirement is met.

## II.     Avoidance of Federal Constitutional Adjudication

*Pullman* also requires "[a] state law question that has the potential of at least altering the nature of the federal constitutional questions." *C-Y Dev. Co.*, 703 F.2d at 378.  "For *Pullman* purposes . . . it is sufficient if the state law issues might 'narrow' the federal constitutional questions." *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996) (citation omitted).  The Ninth Circuit has consistently found this requirement satisfied "where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks."  *VH Prop. Corp. v. City of Rancho Palos Verdes*, 622 F. Supp. 2d 958, 963 (C.D. Cal. 2009).

Here, the resolution of the state law issues can avoid or narrow the adjudication of the federal constitutional issues.  If the ICA determines that Governor Ige lacked the authority to issue supplemental proclamations to extend the state of emergency beyond 60 days, the Mask Mandate that is the subject of Plaintiff's constitutional challenges will be void and dispense of the need to address these constitutional issues.  *See Almodovar*, 832 F.2d at 1140.  While Plaintiff contends that abstention will delay the adjudication of her constitutional claims and cause undue hardship, delay is not the salient inquiry under this prong.  Indeed, *Pullman* abstention necessarily contemplates delays in federal lawsuits

pending the resolution of state court proceedings.[9]  It is invoked to defer adjudicating federal constitutional claims where, as here, they might be narrowed or eliminated.[10]

Because Plaintiff's federal claims are predicated on the underlying viability of the Eighteenth Proclamation, the voidance of which could obviate the need for a determination of federal constitutional questions, the second requirement is satisfied.

### III. Uncertainty of Determinative State Law Issues

The third *Pullman* requirement considers whether "the proper resolution of the possible determinative issue of state law is uncertain." *Courthouse News*, 750 F.3d at 783–84 (internal quotation marks and citation omitted).  "Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Pearl

---

[9]  Outside the First Amendment context, *Pullman* abstention can be invoked even when there are no proceedings in state court.

[10]  Even if the Court declined to abstain, Plaintiff does not have a right to present evidence in the course of litigating a motion to dismiss, despite her contention otherwise.  *See* ECF No. 43 at 11.  Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenge the sufficiency of a plaintiff's allegations in the pleadings, not the sufficiency or weight of evidence.  She has no right or entitlement to present evidence unless she survives Defendants' motions to dismiss.

*Inv. Co.*, 774 F.2d at 1465 (citation omitted).  Resolution of state law issues "might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court."  *Id.*

Here, the Court cannot predict with any confidence the ICA's decision regarding Governor Ige's authority under HRS Chapter 127A.  *See, e.g.*, *Richardson v. Koshiba*, 693 F.2d 911, 917 (9th Cir. 1982) (finding "no substantial indication of how Hawaii's courts would treat [the plaintiff's] state law claims"). Plaintiff focuses on the lack of ambiguity in HRS Chapter 127A in asserting that abstention is improper.  ECF No. 53 at 8–9.  But the ICA should have an opportunity to address the novel and sufficiently important issue regarding Governor Ige's authority to extend emergency powers through supplemental proclamations under HRS Chapter 127A.[11]  *See Almodovar*, 832 F.2d at 1141 (noting that the subject statute was before the California Supreme Court and had yet to be "construed authoritatively").  For these reasons, the Court finds that the third requirement is met.

Because the three *Pullman* requirements are satisfied, the Court finds it appropriate to abstain.  "A district court abstaining under *Pullman* must dismiss the

---

[11] Plaintiff's insistence that the outcome is clear is of no consequence, as the state court rejected Plaintiff's very arguments in *For Our Rights*.

17

state law claim and stay its proceedings on the constitutional question until a state court has resolved the state issue." *Cedar Shake & Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993); *see Courtney*, 736 F.3d at 1164 (holding that "the district court should have retained jurisdiction over the case pending resolution of the state law issues, rather than dismissing the case without prejudice"); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) ("If a court invokes *Pullman* abstention, it should stay the federal constitutional question 'until the matter has been sent to state court for a determination of the uncertain state law issue.'" (citation and footnote omitted)); *Columbia Basin*, 268 F.3d at 802 ("If we abstain 'under *Pullman*, retention of jurisdiction, and not dismissal of the action, is the proper course.'" (quoting *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir. 1979))).

The Court therefore dismisses Plaintiff's state law claim and stays her federal constitutional claims. Plaintiff must wait until the ICA decides *For Our Rights* before returning to federal court. *See San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998) ("Once *Pullman* abstention is invoked by the federal court, the federal plaintiff must then seek a definitive ruling in the state courts on the state law questions before returning to the federal forum."

(citing *Pullman*, 312 U.S. at 501–02; *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1096 (9th Cir. 1976))).

## CONCLUSION

For these reasons, the Court DISMISSES IN PART AND STAYS IN PART this case. Plaintiff's state law claim is DISMISSED for resolution in state court. This case — comprised of Plaintiff's federal constitutional claims — is STAYED until the ICA's resolution of *For Our Rights*. All pending motions and deadlines are terminated. The Court administratively closes this case for the duration of the stay.

Plaintiff may return to this forum after the conclusion of the ICA proceedings. The parties are to submit a joint status report every 90 days, beginning on August 16, 2021. The parties shall file a notice within seven days of the conclusion of the ICA proceedings, attaching any relevant decision(s) and indicating whether the instant proceedings should recommence.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, May 17, 2021.

Jill A. Otake
United States District Judge

Civil No. 20-00456 JAO-RT, *Lomma v. Connors, et al.*; ORDER DISMISSING IN PART AND STAYING IN PART THIS CASE